[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 153.]

THE STATE OF OHIO, APPELLEE, V. WILLIAMS, APPELLANT.

[Cite as *State v. Williams*, 1995-Ohio-275.]

Criminal law—Aggravated murder—Death penalty upheld, when.

(No. 93-7—Submitted April 5, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Butler County, Nos. CA91-04-060 and

CA92-06-110.

———————————

{¶ 1} On Friday, August 3, 1990, at approximately 10:20 p.m., Hamilton police officers responded to a call that someone had been shot in the one hundred block of Beckett Street in the city of Hamilton, Ohio. When the police arrived, they found a red cab from the Clifton Cab Company of Cincinnati with its motor stalled and the meter stopped, displaying a fare of $32.10. The driver, Wayman Hamilton, was slumped to the right behind the steering wheel with a single gunshot wound in his forehead. Paramedics airlifted Hamilton to a hospital in Cincinnati, where he was pronounced dead. Doctors recovered a .25 caliber bullet from Hamilton's head.

{¶ 2} On the front seat of the cab, detectives recovered a single .25 caliber cartridge casing from a semiautomatic weapon. Hamilton's trip sheet indicated that, in addition to the $32.10 fare shown on the cab's meter, he had generated approximately $50 in fares that evening. While Clifton cab drivers customarily carried money to make change in their shirt pockets, there was no money in Hamilton's shirt pockets; his wallet contained $60.24.

{¶ 3} Earl Jones, a dispatcher for the Clifton Cab Company, testified that at approximately 9:20 p.m. on the night of the shooting, Hamilton's cab had been dispatched to pick up a fare at the Fuel Mart gas station on Compton Road in Mt. Healthy. The person who wanted the cab stated that he was going to Hamilton, Ohio. Jones indicated he received three or four calls over a period of approximately

one hour from the Fuel Mart; two or three calls came from the person who wanted the cab and one came from a Fuel Mart employee.

{¶ 4} William Teasley and James Trivett were working at the Fuel Mart that evening. They identified appellant, Clifford Donta Williams, as the person who called for the cab at the gas station. Teasley testified that appellant walked into the gas station and asked if he could use the phone because he did not have any money to use the pay phone on the corner. Teasley handed the phone and phone book to appellant to call a cab. Appellant waited at the gas station for the cab for approximately twenty to forty-five minutes, talking with Teasley and Trivett. Appellant inquired about potential employment at Fuel Mart. He expressed concern that, because of his juvenile record, he may not be hired. Appellant stated in the course of the conversation that he did not have any money, that he had just come from Los Angeles, and that he was staying in Mt. Healthy. After a period of time, a red Clifton cab arrived just as Trivett made a final call to the cab company. Appellant got in the front seat of the cab and left the Fuel Mart.

{¶ 5} On Monday, August 6, 1990, Jeff Wallace, a resident of Columbus, Ohio, was in Hamilton searching for work. At approximately 9:45 p.m., Wallace left his hotel to go to the store. A few blocks away, Wallace picked up appellant, who was hitchhiking. At appellant's request, Wallace drove him to an apartment in Hamilton, where appellant changed clothes. Appellant then offered to pay Wallace gas money if Wallace would drive him somewhere else. Wallace agreed and followed appellant's directions until appellant asked Wallace to drive down an alley in the vicinity of South Second Street near Central Avenue in downtown Hamilton. Wallace became suspicious and asked appellant to get out of the truck. At that time, appellant pulled a .25 caliber pistol out of his pocket, shoved a clip into it, told Wallace, "I got one bullet in the chamber" and demanded all of Wallace's money. Wallace shifted the truck into low gear and accelerated. As he did this, Wallace heard one gunshot. Appellant fired a second shot that hit Wallace on the back of

the head.  After a struggle, appellant fled the scene, and Wallace sought help for his injury.

{¶ 6} While Wallace was in the hospital, he saw a newspaper article that showed a picture of the appellant, who had been arrested for the murder of Wayman Hamilton.  Wallace recognized appellant as the person who shot him.  Wallace called the police and subsequently identified appellant from a group of photographs the police showed him at the hospital and also from a police line-up.

{¶ 7} Detectives examined the truck that Wallace drove the night of the shooting.  The detectives discovered two fired .25 caliber cartridge casings in the truck.  The detectives submitted the two casings found in the truck and the casing recovered from the scene of the Wayman Hamilton murder to the Ohio Bureau of Criminal Investigation ("BCI") for comparison.

{¶ 8} David Hall, a ballistics and firearms expert from BCI, testified that all three of the cartridge casings had at one time been loaded in, chambered in, and extracted from the same firearm.  Hall's testimony indicated that although he could not conclusively determine whether the cartridge casings had been *fired* from the same firearm, they had been *extracted* from the same firearm.  Hall explained that he found matching characteristics on the rims of all three cartridge casings where the firearm's extractor hooks in and pulls the casing out of the chamber.  Hall also testified that the three fired cartridge casings had similar, uniformly smooth firing pin impressions that indicated that they could have been fired from the same .25 caliber semiautomatic firearm.  Hall did indicate, however, that there was not sufficient detail for a conclusive determination due to the smoothness of the firing pin and the hardness of the casings.

{¶ 9} Forensic analysis also revealed human blood on a pair of appellant's jeans that police recovered during the execution of a search warrant in an apartment where appellant was staying.  Experts at BCI were unable to identify the type of blood found on the jeans.

**{¶ 10}** On September 19, 1990, the Butler County Grand Jury returned a four-count indictment against appellant. Count One charged appellant with the aggravated murder of Hamilton pursuant to R.C. 2903.01(B). Count One contained three specifications: (1) appellant committed the offense while committing or attempting to commit an aggravated robbery or while fleeing immediately after committing or attempting to commit an aggravated robbery, and appellant was the principal offender in the commission of the aggravated murder, pursuant to R.C. 2929.04(A)(7); (2) appellant committed the offense for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by appellant, pursuant to R.C. 2929.04(A)(3); and (3) appellant had a firearm on or about his person or under his control while committing the offense, pursuant to R.C. 2929.71 and 2941.141. Count Two charged appellant with the aggravated robbery of Hamilton pursuant to R.C. 2911.01(A)(1). Count Three charged appellant with the aggravated robbery of Wallace. Count Four charged appellant with felonious assault of Wallace pursuant to R.C. 2903.11(A)(2). Counts Two, Three, and Four also contained firearm specifications.

**{¶ 11}** On January 7, 1991, the guilt phase of the trial began. On January 10, 1991, the jury found appellant guilty as charged in the indictment. A penalty phase hearing was held on January 17, 1991. The jury found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and recommended that appellant be sentenced to death on the aggravated murder charge and the specifications. On February 26, 1991, the trial court issued a written opinion accepting the jury's recommendation and imposed a sentence of death on the aggravated murder charge and specifications. The trial court overruled appellant's motion for a new trial on the basis of newly discovered evidence. Appellant then appealed to the Twelfth District Court of Appeals for Butler County, which affirmed the decision of the trial court.

**{¶ 12}** This cause is now before this court upon an appeal as of right.

4

---

*John F. Holcomb*, Butler County Prosecuting Attorney, *Daniel G. Eichel* and *Robert N. Piper III*, Assistant Prosecuting Attorneys, for appellee.

*David H. Bodiker*, Ohio Public Defender, *Joann M. Jolstad* and *Richard J. Vickers*, Assistant Public Defenders, for appellant.

---

**WRIGHT, J.**

{¶ 13} R.C. 2929.05(A) mandates that we undertake a three-prong analysis. First, we must consider the specific issues raised by the appellant with regard to the proceedings below. Second, we must independently weigh the aggravating circumstances in this case against any factors that mitigate the penalty. Third, we must independently consider whether appellant's sentence is disproportionate to the penalty imposed in other similar cases.

{¶ 14} For the reasons that follow, we uphold appellant's conviction and affirm the sentence of death.

I

{¶ 15} Propositions of Law I, II, and IV relate to joinder of the separate charges dealing with separate victims[1] and the consideration of duplicative aggravating circumstances. Appellant asserts that the trial court erred to his prejudice in failing to grant the defense's request to sever the charges pending against him. Appellant also asserts that the trial court erred to his prejudice by permitting the jury to consider irrelevant evidence dealing with the separate felonious assault of Wallace during both phases of the trial and by permitting the jury to consider duplicative aggravating circumstances.

---

1. In counts one and two appellant was charged with and found guilty of aggravated murder and aggravated robbery. These charges pertain to Wayman Hamilton. The crimes occurred on August 3, 1990. In counts three and four, appellant was charged with and found guilty of aggravated robbery and felonious assault. These charges pertain to Jeff Wallace. The crimes occurred on August 6, 1990.

5

**{¶ 16}** Crim.R. 8(A) permits two or more offenses to be charged in the same charging instrument in a separate count for each offense if the offenses charged are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct. Additionally, in *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus, we stated: "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid. R. 404(B). To be admissible these other acts must tend to show by substantial proof 'identity' or other enumerated purposes under Evid. R. 404(B). Although the standard for admissibility is strict, the other acts need not be the same as or similar to the crime charged."

**{¶ 17}** This court in *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1, 5-6, provided a thorough analysis of the issue of joinder in capital cases. In *Franklin*, we stated:

"The law favors joining multiple criminal offenses in a single trial under Crim.R. 8(A). *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298. Two or more offenses can be joined if they are of the same or similar character. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 314-315, 421 N.E.2d 1288, 1290. An accused may move to sever under Crim.R. 14 if he can establish prejudice to his rights. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298; *State v. Wiles* (1991), 59 Ohio St.3d 71, 76, 571 N.E.2d 97, 108. For the appellate court to reverse a trial court ruling that denies severance, the accused must show that the trial court abused its discretion. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298; *State v. Torres*, *supra*, at syllabus.

"The prosecutor may counter the claim of prejudice in two ways. *State v. Lott*, 51 Ohio St.3d at 163, 555 N.E.2d at 298. The first is the 'other acts' test, where the state can argue that it could have introduced evidence of one offense in the trial

of the other, severed offense under the 'other acts' portion of Evid.R. 404(B). *Id.*; see, also, *Bradley v. United States* (C.A.D.C. 1969), 433 F.2d 1113, 1118-1119. The second is the 'joinder' test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. *State v. Lott*, *supra*; *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204 405 N.E.2d 247, 251; *State v. Torres* [1981], 66 Ohio St.2d at 343-344, 20 O.O.3d at 315, 421 N.E.2d at 1291."

{¶ 18} The prosecution in this case met both tests. "'[E]vidence of other crimes may be presented when "they are so blended or connected with the one on trial as [*sic*] that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."'" *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317, 415 N.E.2d 261, 269, quoting *United States v. Turner* (C.A.7, 1970), 423 F.2d 481, 483-484.

{¶ 19} In this case, the ballistics evidence, although not conclusive, tended to show that the same gun was involved in the murder of Wayman Hamilton and the assault on Jeff Wallace. A ballistics and firearms expert from BCI testified that all three of the cartridge casings, the one recovered from the scene of the Hamilton murder and two casings recovered from the cab of Wallace's truck, had at one time been loaded in, chambered in, and extracted from, the same firearm.

{¶ 20} Evidence tending to show that the same gun was used in both crimes is pertinent to the issue of identity. Wallace identified appellant through a picture in the newspaper, by selecting his photo from a police photo array, and in a police line-up. Wallace's identification coupled with the .25 caliber casings found at the Hamilton crime scene and in the cab of Wallace's truck connected the two crimes and served to identify appellant as the perpetrator of both crimes. Due to the proximity in time and location, the apparent use of the same gun, and Wallace's identification of the appellant as the perpetrator, the trial court correctly permitted joinder of the separate crimes. Appellant has not shown that he was prejudiced by

the trial court's failure to sever the charges, nor has he shown that the trial court abused its discretion in failing to sever the charges. Appellant's challenge is without merit.

{¶ 21} Appellant also contends that the evidence of the Wallace counts was graphic and inflammatory, that it provided the jury with evidence portraying Wallace as victimized by the appellant, that the evidence concerning the crime against Wallace was prejudicial in both the guilt and penalty phase of the trial, and that the evidence influenced the jury to recommend death. "Pursuant to R.C. 2929.03(D)(1), the prosecutor, at the penalty stage of a capital trial, may introduce '*** any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing ***.'" *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, paragraph one of the syllabus. The guilt phase evidence must be relevant to the aggravating circumstance to be admitted into evidence during the penalty phase. The question of relevancy must be governed by the Rules of Evidence, as the rules apply to the sentencing phase of a capital trial. The Rules of Evidence impose upon the trial court the duty to weigh the probative value of the evidence against the potential for unfair prejudice, confusion of the issues, and misleading of the jury. Evid.R. 403.

{¶ 22} In this case, the aggravating circumstances included appellant's commission of the aggravated murder of Wayman Hamilton as principal offender while he was committing or attempting to commit aggravated robbery. The evidence of Jeff Wallace's shooting and aggravated robbery would have been admissible in the murder trial under R.C. 2945.59 and Evid.R. 404(B), irrespective of joinder, because it was probative of appellant's identity as Hamilton's killer. The evidence of the assault on Wallace was relevant in the penalty phase as tending to prove the aggravating circumstances. The facts of the Wallace assault were sufficiently similar to the circumstances of Hamilton's murder to suggest that appellant robbed Hamilton. Furthermore, the trial court gave a limiting instruction,

indicating to the jury that it should consider the evidence pertaining to the Wallace assault only for proving again the aggravating circumstances.[2] It is presumed that the jury followed the instructions of the court. *State v. Murphy* (1992), 65 Ohio St.3d 554, 584, 605 N.E.2d 884, 907.

## II

{¶ 23} Propositions of Law III and IX pertain to deficiencies in the appellate record. Appellant contests the sufficiency of the record on two grounds. The first challenge is that this court erred by refusing to permit appellant to supplement the record.[3] Appellant alleges that this denial precludes our ability to conduct the plenary review required by R.C. 2929.05(A).

{¶ 24} This court, in *State ex rel. Spirko v. Court of Appeals* (1986), 27 Ohio St.3d 13, 27 OBR 432, 501 N.E.2d 625, stated that a defendant in a capital case is constitutionally entitled to a complete, full, and unabridged transcript of all proceedings against him, including a transcript of the arraignment. However, this right may be waived. Pursuant to App. R. 9(B), the appellant bears the burden of

---

2. The court issued the following instructions:

"[Y]our consideration of this sentence phase goes only to Count One, the aggravated murder with the two specifications ***.

"You are to give no consideration of sentence or evidence as to any other Counts in the indictment or as to any Counts of Jeff Wallace. But all that evidence that was admitted can be used and you may consider that evidence since the Prosecutor has to prove Count One beyond a reasonable doubt again, only as it is relevant to the issue of identity, or the existence of purpose, motive, scheme, plan, or a system, absence of mistake, or acts of the Defendant in committing the acts which are the aggravating circumstances that the Defendant was found guilty of committing as contained in Specification One, and Two of Count One."

Although evidence relevant to aggravating circumstances is admissible in the penalty phase, State v. DePew (1988), 38 Ohio St.3d 275, 528 N.E.2d 532, the trial court was wrong in instructing that the prosecutor must "prove *** again" the defendant's guilt.

3. The requested materials include the following: transcript of defendant's initial appearance after being arrested on August 10, 1990; transcript of defendant's preliminary hearing on the Wayman Hamilton murder counts, held August 22, 1990; transcript of defendant's preliminary hearing on the Wallace counts, held August 28, 1990; transcript of an arraignment filed September 19, 1990; transcript of jury poll after guilty verdict given; juror questionnaires filled out before voir dire; transcript of selection of the venire; transcript of the lottery to select the three-judge panel; transcript of a scheduling conference held November 30, 1990; duplicate of a photograph of extractor marks that was damaged while in the custody of the Butler County Clerk; presentence investigation report.

ordering the transcript. In *Spirko* the defendant sought to supplement and complete the record in a timely manner. Here, counsel for appellant failed to attempt to supplement the record until the case reached this court. Furthermore, some of the matters that appellant now wishes to add were never part of the trial court's proceedings, and as to these items, a reviewing court may not supplement the record before it with new matter that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. Transcripts from appellant's initial appearance and the preliminary hearing were not before the trial court by way of evidence or otherwise, and should not be relied upon by this court in determining whether the trial court erred. Likewise, the arraignment in the court of common pleas was not part of the trial court's proceedings and should not be considered here.

{¶ 25} Other items that appellant sought to add to the record pertain to the selection of the three-judge panel in the event appellant waived his right to a jury trial, a transcript of the scheduling conference, drawing of the special venire, jury questionnaires, polling of the jury at the conclusion of the guilt phase, a duplicate of a photograph that had been damaged while in the custody of the clerk of courts, and a presentence investigation report.

{¶ 26} Appellant did not request that the selection of the three-judge panel, the drawing of special venire and the scheduling conference be transcribed. Appellant also failed to object to the failure to transcribe those proceedings. Appellant has thus waived any error in this regard. Furthermore, appellant did not make a timely motion in the court of appeals to supplement the record. See App.R. 9(E).

{¶ 27} With regard to the jury questionnaires, there is no indication from the record that appellant attempted to proffer them for the record, although the questionnaires were utilized by appellant in jury selection. As appellant failed to

raise a timely motion pursuant to App.R.9(E) for their inclusion in the appellate record, appellant has waived all but plain error. Upon careful review of the record, we find that appellant has failed to demonstrate plain error.

{¶ 28} Appellant requested a duplicate of State's Exhibit 27(A), a photograph that was allegedly damaged while in the custody of the clerk of courts. The record reflects that State's Exhibit 27(A) is a duplicate of State's Exhibit 27. The only difference between the two photographs is that State's Exhibit 27 had a red circle around the area of comparison by the expert, while State's Exhibit 27(A) does not. As the photographs were substantially the same and appellant has failed to demonstrate either prejudice or plain error, appellant's argument is without merit.

{¶ 29} Appellant also complains that the actual polling of the jury at the conclusion of the guilt phase was not recorded. This was apparently omitted by the court reporter. Appellant's counsel did not make a timely motion to supplement the record, nor did appellant attempt to reconstruct the record. Furthermore, appellant has not demonstrated prejudice.

{¶ 30} Finally, appellant requests that the record be supplemented with a presentence investigation report ("PSI"). The record is clear that the trial court was aware that it could not consider a PSI report on sentencing for the capital offense. For this reason, the court did not order the report until after sentencing on the aggravated murder charge; the PSI report was to be used solely for sentencing on the noncapital offenses.

{¶ 31} Since appellant did not make a timely motion to supplement the record, did not follow App.R.9(C), and has not shown how he was prejudiced, we overrule this proposition of law.

{¶ 32} Appellant's second challenge to the sufficiency of the record is that the trial court erred when it refused to seal a copy of the written statement made by Fuel Mart employee James Trivett, after *in camera* review, and to preserve it for appellate review. Appellant did not raise this assignment of error in the court of

11

appeals. Consequently the allegation of error has been waived. Nevertheless, we will review the allegation.

{¶ 33} Trivett testified that appellant came to the Fuel Mart to call a cab, that appellant stayed at the Fuel Mart for approximately twenty to forty-five minutes, that he, Teasley, and appellant smoked a cigarette together, and that he saw appellant get into the front seat of the cab when the cab finally arrived. Trivett also testified that he previously gave a statement to the police. The defense attorney asked the court to review the statement for any inconsistencies. The trial court reviewed Trivett's statement and found that it was devoid of inconsistencies that the defense could have used for impeachment. Trivett's testimony essentially corroborated the testimony of his co-worker, William Teasley. Trivett's testimony was cumulative and did not provide any additional information.

{¶ 34} Pursuant to Crim.R. 16(B)(1)(g), because the trial court did not give the defense attorney the entire statement, the court *should* have preserved the statement in the records of the court. However, appellant has not shown a single instance in which incompleteness of the record precluded effective review. As there is no indication that appellant has been prejudiced by the exclusion of these items, Propositions of Law III and IX are not well taken.

III

**{¶ 35}** Propositions of Law XXX and XXXI specifically concern allegations of ineffective assistance of counsel at both the trial and appellate level. Present counsel has also raised claims of ineffective assistance of counsel in various other propositions. Although trial counsel did fail to make some objections, trial representation was not so deficient as to meet the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.[4]

**{¶ 36}** The performance of appellate counsel is subject to greater criticism than that of trial counsel. In this case, appellate counsel failed to raise several significant points that trial counsel had preserved for the record. However, none of these deficiencies is so severe that appellant can show that, in light of all the circumstances, counsel's representation was professionally unreasonable. *Id.* at 690-691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695-696. Additionally, appellant cannot demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Appellant's challenge to the sufficiency of counsel is not well taken.

IV

**{¶ 37}** Propositions of Law X through XV and XVIII pertain to evidentiary issues. In Proposition X, appellant complains that the trial court did not permit his trial counsel to comment on appellant's emotional reaction to the reading of the verdict as mitigating evidence. The court in *Lockett v. Ohio* (1978), 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990, stated that the sentencer in a capital case should not be precluded from considering, as a mitigating factor, "any aspect

---

4. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, sets forth the two-prong test for determining whether counsel was ineffective. The defendant must show (1) that counsel's performance was deficient and (2) that there is a reasonable probability the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." The court continued by noting, "[N]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Id.* at fn. 12. Appellant's emotional reaction to the reading of the verdict did not bear on the defendant's character, prior record, or the circumstances of his offense. Accordingly, Proposition of Law X is without merit.

{¶ 38} In Proposition of Law XI, appellant challenges the out-of-court identification by Wallace and the Fuel Mart employees, William Teasley and James Trivett, as having been tainted by procedures that were unduly suggestive. While in the hospital, Wallace saw a newspaper photo of appellant, who had been arrested in connection with the murder of Wayman Hamilton. After seeing this picture, Wallace telephoned the police and identified appellant as his assailant. Subsequently, the police brought six photographs to the hospital. Wallace selected a photograph of appellant from the photo array. Additionally, Wallace, without hesitation, picked appellant from a police line-up.

{¶ 39} Teasley and Trivett selected appellant from a photo array consisting of three Polaroid photos. Both men identified appellant as the person who called the cab at the Fuel Mart and as the person with whom they were speaking on the night of the Wayman Hamilton murder and as the person who got into the Clifton Cab.

{¶ 40} The United States Supreme Court, in *Neil v. Biggers* (1972), 409 U.S. 188, 199-200,93 S.Ct. 375, 382, 34 L.Ed.2d 401,411, set forth factors to be considered in determining "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. *** [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime,

the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

{¶ 41} Wallace had ample opportunity to observe appellant while appellant was a passenger in his truck. Only two days passed between the assault on Wallace and Wallace's identification of appellant in the newspaper photograph. Wallace was in the hospital for six days following the assault; it was during this time that the police showed him the photo array from which Wallace identified appellant. Teasley and Trivett spoke with appellant for approximately twenty to forty-five minutes while appellant waited for the cab at the Fuel Mart. Both men had adequate opportunity to observe appellant.

{¶ 42} As we stated in *State v. Jells* (1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464, 470, "[t]he focus, under the 'totality of the circumstances' approach, is upon the reliability of the identification, *not* the identification procedures." (Emphasis *sic*.) There is nothing in the record that indicates that the witnesses' identification was not reliable. Furthermore, nothing in the record indicates that identification methods used by the police were so suggestive that they created a risk of misidentification.

{¶ 43} In Proposition of Law XII, appellant contests references to his juvenile record as being highly inflammatory and irrelevant. In this proposition, appellant refers to comments made by prosecution witnesses that appellant had mentioned that his inability to get a job might be attributed to his juvenile record and to testimony by one of the arresting officers that the defendant mentioned that he had "gotten in trouble" in California. Defense counsel objected to this testimony and moved for a mistrial, arguing that a limiting instruction would not be sufficient and that a mistrial would be the only proper remedy to cure this error.

{¶ 44} This court has previously stated: " ' " 'Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has

probative value and is none the less competent evidence because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove ***.'" ***.'

"The threshold criterion is whether the other acts evidence can show by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." *State v. Davis* (1991), 62 Ohio St.3d 326, 338, 581 N.E.2d 1362, 1374.

{¶ 45} The testimony of the arresting police officer and Teasley mentioned appellant's juvenile record in relation to identification, not to prove his bad character or to imply that appellant acted in conformity therewith. The person identified by Trivett and Teasley as appellant, who got into the victim's cab, told them he had recently come into town from California, and had a juvenile record. Just before his arrest, the appellant told police that he had come back from California, where he had been in trouble for auto theft. The evidence tends to confirm Trivett's and Teasley's identification of the person they talked to as the appellant. The court offered to give a limiting instruction, but defense counsel declined. "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). As the prosecution offered the testimony to prove identification and not for a prohibited purpose, appellant's challenge is not well taken.

{¶ 46} In Proposition of Law XIII, appellant challenges the admission of ballistics evidence that connected the Hamilton murder and Wallace assault. With reference to the ballistics evidence, appellant contends that the prosecution's evidence was misleading and confusing to the jury, because it was weak. This argument lacks merit, as the weight to be given the evidence is primarily for the trier of the facts. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819,

825. Accordingly, there is no plain error and the judgment of the jury will not be overturned.

{¶ 47} The previous argument is related to the issue raised in Proposition of Law XVIII that challenges the sufficiency of the evidence. Appellant contends that the state's case-in-chief contained insufficient direct and physical evidence to implicate appellant in the Hamilton murder. Appellant argues that the direct and circumstantial evidence linking him to the murder of Hamilton is insufficient to uphold a finding of guilt. Appellant is incorrect.

{¶ 48} This court, in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus, held: "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required." Additionally, when a defendant challenges the legal sufficiency of the state's evidence, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis sic.) *Jackson v. Virginia* (1979), 433 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573." *State v. Waddy*, 63 Ohio St.3d at 430, 588 N.E.2d at 825.

{¶ 49} The evidence presented at trial, although circumstantial, was sufficient to meet this test. Furthermore, we will not substitute our evaluation of a witness's credibility for that of the jury. "Not even in a capital case may we sit as a 'thirteenth juror,' *** as to a judgment of conviction." *State v. Tyler* (1990), 50

Ohio St.3d 24, 33, 553 N.E.2d 576, 589. Appellant's proposition of law regarding the sufficiency of the evidence is not well taken.

{¶ 50} In Proposition of Law XIV, appellant challenges the inclusion of an alias in the indictment, and references to the use of an alias during the trial. Appellant asserts that due to the inclusion of the alias, he was prejudiced and denied his rights of due process. After reviewing the record, we find the references to an alias to be harmless error.

{¶ 51} Appellant's next evidentiary challenge, in Proposition of Law XV, is that the trial court erred in failing to suppress allegedly illegally obtained evidence. This refers to the search of the apartment where the defendant allegedly had Wallace take him to change clothes before the shooting took place. The trial court ruled that appellant did not have standing to challenge the search because the apartment did not belong to him.

{¶ 52} Appellant cites *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, in support of his position that a person who was legitimately on the premises has standing to challenge the validity of a search and seizure. When first announced, this holding became known as "the automatic standing rule." However, appellant's reliance on this case is misplaced for two reasons: (1) United *States v. Salvucci* (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619, overruled the automatic standing rule announced in *Jones*, and (2) even if *Jones* were still good law, counsel has taken it completely out of context.

{¶ 53} The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable. The burden is upon the defendant to prove facts sufficient to establish such an expectation. *Rakas v. Illinois* (1978), 439 U.S. 128, 131, 99 S.Ct. 421, 424, 58 L.Ed.2d 387, 393, fn. 1; *State v. Steele* (1981), 2 Ohio App.3d 105, 107, 2 OBR 118, 120, 440 N.E.2d 1353, 1356.

{¶ 54} Based upon the record before this court, we cannot say that appellant had a reasonable expectation of privacy. The apartment belonged to someone else; although appellant had some personal items in the apartment, there is no indication that he was staying in the apartment on a regular or even a semi-regular basis; testimony indicates that appellant was staying at his cousin's apartment when the search occurred. Unlike the United States Supreme Court case of *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, where the court determined that the defendant's status as an overnight guest was sufficient to show that he had an expectation of privacy that society was prepared to recognize as reasonable, there was no evidence that appellant was an overnight guest in the apartment at the time the police executed the search warrant. Accordingly, the broader "reasonable expectation of privacy" rule is not met based upon the facts of this case.

{¶ 55} Although the trial court's reasoning on this issue was faulty, the conclusion reached is nonetheless correct. This proposition of law is without merit.

V

{¶ 56} Propositions of Law V, XIX through XXII, XXIV, XXV, XXVIII and XXIX relate to various jury issues.

{¶ 57} In Proposition of Law V, appellant asserts that the death sentence was invalid because, during the sentencing phase of the trial, the jury originally stated it was "at a stalemate" and then, when the court polled the jury, a juror allegedly expressed hesitancy in answering.

{¶ 58} The record shows that the jury sent a note to the court stating that there was a stalemate. The court instructed the bailiff to call counsel and the defendant in order to review the question before giving further instructions to the jury. Prior to counsel's arriving and before the court could respond, the jury reached a verdict. Appellant asserts that because "[t]he record is clear that the jury was deadlocked when it sent the question to the trial court," "the subsequent hesitancy

by one of the jurors in the poll cried out for further inquiry." Although the jury originally expressed that it was at a stalemate before the trial judge could give further instructions, the jury reached its verdict. The court ruled that "the question now is a moot question because they have reached a verdict, and no instructions were given to them." When the court inquired whether either the prosecution or defense had anything further before the jury was called in, both parties responded, "No."

{¶ 59} As for the "hesitancy" expressed by the juror, the record reflects only the following exchange:

"[Clerk]: Gladys Pennekamp, is this your recommendation?

"Judge Valen: You have to answer. What?

"Ms. Pennekamp: Yes it is."

{¶ 60} Contrary to appellant's assertion, we do not view this as a hesitancy that necessitated further interrogation. The trial court was in a better position to view the demeanor and actions of the juror, as were the prosecution and defense counsel. In the absence of an objection and on the basis of such sparse evidence, this proposition of law is without merit.

{¶ 61} Propositions of Law XIX, XXIV, and XXV pertain to the instructions the court gave the jury in the guilt phase and the penalty phase. Errors raised in Proposition XIX and Part A of XXIV are harmless. The argument raised by Proposition XV has been consistently rejected by the court and is not well taken in this case.

{¶ 62} In Proposition of Law XXIV, appellant seeks to have this court extend the doctrine of *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph three of the syllabus, to the penalty phase in capital cases.[5] *Thomas*

---

5. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph three of the syllabus reads: "A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon

permits a jury to proceed to consider lesser included offenses when it is initially unable to unanimously agree that the defendant is guilty or not guilty of the charged offense.

{¶ 63} Such an extension is implausible. R.C. 2929.03(D)(2) specifically requires that the jury *shall* determine whether the aggravating circumstances outweigh the mitigating factors. If the jury so finds, beyond a reasonable doubt, it shall recommend a sentence of death. Thus, a jury must finish its balancing determinations. If and only if the jury finds that the state has not met its burden of proving that the aggravating circumstances outweigh the mitigating factors may it consider the two life sentence options.

{¶ 64} In Propositions of Law XVI, XX through XXII, XXVIII and XXIX, appellant contests various issues pertaining to voir dire. Upon careful review of the record, we find that the trial court did not err to the prejudice of the appellant during voir dire. Nor did the trial court err in excusing a prospective juror for cause when the juror stated that he could not follow the law and could not vote for the death penalty. See, generally, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768.

{¶ 65} The challenge concerning the prosecutor's use of peremptory challenges has consistently been rejected by this court. There is nothing in the record that indicates that the appellant was prejudiced by any actions of the prosecutor or the court. Appellant's challenge to these issues is not well taken.

---

which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense."

VI

{¶ 66} In Proposition of Law VI, appellant alleges prosecutorial misconduct in both the guilt and penalty phases of the trial that warrants reversal of the death sentence. The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300. In *State v. Maurer*, *supra*, we reasoned that wide latitude is granted in closing argument and that the effect of any prosecutorial misconduct must be considered in light of the whole case. Read in their entirety, the prosecutor's statements, while misstating the law in some instances, were not prejudicial to the extent that appellant's substantial rights were adversely affected. Appellant's assertion that his death sentence should be reversed due to prosecutorial misconduct is without merit.

VII

{¶ 67} In Proposition of Law VII, appellant alleges that the presiding judge acted improperly by predetermining appellant's guilt and that he expressed his determination to the jury, thereby prejudicing the jury against the appellant. Appellant alleges that because the judge mentioned that there would be two parts to the trial, the judge implied appellant was guilty, thereby prejudicing the appellant.

{¶ 68} Appellant's counsel contends that the judge's "unequivocal language communicated that Clifford was guilty and a penalty phase was going to be held." Counsel has taken the comments made by the judge completely out of context. The judge did not use conclusive language; he spoke generally of there being a *possibility* that the jury would have to return for a second phase *depending on the verdict*. When the judge mentioned that the penalty phase would begin on January 17, it was for scheduling purposes. The judge was trying to determine if any prospective jurors had any hardship in the event that the trial lasted for a few weeks. The judge never spoke in definitive terms and, upon review of the trial transcripts,

we do not believe that his comments communicated a belief in the appellant's guilt or innocence.

{¶ 69} In Proposition of Law VIII, appellant complains that the trial judge had predetermined appellant's guilt, as revealed through his comments in overruling a pretrial motion to discover the identity of the confidential informant during voir dire.

{¶ 70} When the trial judge overruled the defense motion to discover the name of the confidential informant, he reasoned that there was indication that the informant's testimony would be detrimental rather than helpful to the defense, because the informant allegedly overheard what amounted to a confession. The judge's statement, "he can subpoena whatever witnesses he wishes to. He knows who he talked to," was made in the course of overruling the defense motion. Furthermore, the record is clear that appellant raised the issue of judicial bias previously. This matter was decided in *In re Disqualification of Valen* (1991), 73 Ohio St.3d 1204, 652 N.E.2d 793.

{¶ 71} In Proposition of Law XXVI, appellant asserts that the trial court's comments at his sentencing hearing and its opinion issued after the hearing contain irrelevant and improper considerations for sentencing appellant to death. Appellant contends that the trial court erred because it considered duplicative aggravating circumstances, considered the assault on Wallace when determining appellant's sentence, confused the concepts of "residual doubt" and "reasonable doubt," and discounted certain mitigating evidence. Appellant's assertions are not well taken.

{¶ 72} The trial court did refer to the shooting and attempted robbery of Jeff Wallace during the sentencing phase. The court did this in stating its conclusion that the state had proved the aggravating circumstances beyond a reasonable doubt. The judge specifically stated: "[T]estimony of a firearms examiner, together with the circumstances of the recovery of the fired cartridge cases, and identification of the Defendant in the shooting and the attempted robbery of Jeff Wallace, was

*relevant to identity, scheme, and motive*, and was, *in this limited sense*, relevant to the aggravated circumstances, that is, that the Defendant was the principal offender in the aggravated murder while committing aggravated robbery as to Wayman Hamilton."  (Emphasis added.)

**{¶ 73}** As for appellant's assertion that the court confused the concepts of "residual doubt" and "beyond a reasonable doubt," appellant is wrong.  Appellate counsel states: "Simply because the court had no 'reasonable doubt' about Appellant's guilt, it did end the inquiry as to whether there was 'residual doubt' about his guilt."   Justice Sandra Day O'Connor, in her concurring opinion in *Franklin v. Lynaugh* (1988), 487 U.S. 164, 188, 108 S.Ct. 2320, 2335, 101 L.Ed.2d 155, 175, stated:  "'Residual doubt' is *** a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'  Petitioner's 'residual doubt' claim is that the States must permit capital sentencing bodies to demand proof of guilt to 'an absolute certainty' before imposing the death sentence.  Nothing in our cases mandates the imposition of this heightened burden of proof at capital sentencing."  The trial judge did not confuse the concepts of "residual doubt" and "beyond a reasonable doubt."  The trial judge merely determined that "residual doubt" was not to be given any weight as a mitigating factor.  Furthermore, even if the trial court did confuse the concepts, the confusion would be cured by our independent review.

**{¶ 74}** Appellant also asserts that the trial court improperly discounted mitigating evidence.  To the contrary, the trial court thoroughly reviewed each mitigating factor as set forth in R.C. 2929.04(B)(1) through (7) and specified the amount of weight given to each factor.   The court did accord appellant individualized treatment and did focus on appellant's particularized characteristics of this appellant.

**{¶ 75}** With regard to appellant's assertion that the death sentence should be reversed because the trial and appellate courts considered duplicative aggravating

circumstances, we direct appellant's attention to *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph five of the syllabus.[6]

{¶ 76} Although the court of appeals did not apply the merger doctrine below, upon careful review of the record, we have determined that the jury's consideration of the duplicative aggravating circumstances during sentencing did not affect the verdict. Furthermore, we have independently determined that the remaining aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. Appellant's assertion that the trial court acted improperly is correct, but the error is harmless.

{¶ 77} Appellant, in his Proposition of Law XXIII, complains that the trial court denied his request for the appointment of a "mitigation specialist." Ohio requires a criminal defendant to demonstrate a particularized need for assistance. *State v. Broom* (1988), 40 Ohio St.3d 277, 283-284, 533 N.E.2d 682, 691; *State v. Henderson* (1988), 39 Ohio St.3d 24, 31, 528 N.E.2d 1237, 1244. Absent such demonstration, the trial court does not abuse its discretion in denying court-appointed expert assistance. In our view, a review of the record reflects that the appellant did not demonstrate a particularized need for a mitigation specialist; accordingly, the trial court did not err.

{¶ 78} Appellant also alleges, in Propositions of Law XVI and XVII, that the trial court erred in refusing to preserve the prosecutor's file, under seal, for *in camera* appellate review and that the court also erred in refusing to order disclosure of the state's confidential informant. These two propositions of law are interrelated

---

6. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph five of the syllabus, reads: "In the penalty phase of a capital prosecution, where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purposes of sentencing. Should this merging of aggravating circumstances take place upon appellate review of a death sentence, resentencing is not automatically required where the reviewing court independently determines that the remaining aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and that the jury's consideration of duplicative aggravating circumstances in the penalty phase did not affect the verdict."

in that they both pertain to the appellant's assertion that the prosecutor did not comply with discovery requests and withheld exculpatory information.

{¶ 79} While executing a search warrant, the police found appellant at an apartment in Hamilton, Ohio. The warrant was apparently issued on the basis of an affidavit describing a tip from a confidential informant. The informant told police that he had heard someone named "Donta Jones" confess to shooting the cab driver and that "Donta Jones" was staying at his cousin's apartment in Hamilton.[7]

{¶ 80} Defense counsel sought to discover the identity of the informant. At the conclusion of an evidentiary hearing, the trial court refused to order the state to disclose the informant's identity.

{¶ 81} This court established the standard for determining when the identity of a confidential informant must be revealed to the defense in *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, syllabus: "The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *Williams* continues, "Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed." *Id.* at 76, 4 OBR at 197-198, 446 N.E.2d at 781.

{¶ 82} In this case, the only apparent involvement the informant had with the appellant was that he overheard the appellant telling another person that he (the appellant) shot the cab driver. Based upon this information, the police ultimately arrested the appellant. The informant subsequently confirmed that the appellant was the person who made the statement about the Hamilton murder.

---

7. Appellant's middle name is "Donta," and he was staying with his cousin, Scott Jones, in Hamilton, Ohio.

**{¶ 83}** Based upon the facts in the record, it does not appear that the testimony of the informant was vital to establishing an element of the crime. The informant was not an eyewitness to or participant in the crimes; the state did not intend to call the informant as a witness; and the informant would not have helped to establish appellant's alibi defense. Nor would disclosure of the informant have been beneficial to appellant in preparing or making a defense. Accordingly, the trial court did not err in refusing to compel the prosecutor to reveal the identity of the confidential informant or in refusing to order the prosecutor's file preserved for appellate review.

## VIII

**{¶ 84}** In Proposition of Law XXXII, appellant challenges the constitutionality of R.C. 2929.03, claiming that Ohio's capital sentencing scheme prevents the jury from deciding whether death was the appropriate punishment. Appellant asserts that because R.C. 2929.03 is phrased in mandatory language,[8] it precludes the jury from exercising mercy and deciding whether death was the appropriate punishment notwithstanding the weighing process. This argument has been previously rejected by this court. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; and *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464.

**{¶ 85}** In Proposition of Law XXXIV, appellant asserts that Ohio's death penalty statutes are unconstitutional both on their face and as applied. This court has repeatedly rejected such arguments. See *State v. Jenkins*, *supra*; *State v.*

---

8. R.C. 2929.03(D)(2) reads, in part: "If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury *shall* recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment." (Emphasis added.)

*Lorraine* (1993), 66 Ohio St.3d 414, 426, 613 N.E.2d 212, 222; *State v. Grant* (1993), 67 Ohio St.3d 465, 483, 620 N.E.2d 50, 69; and *State v. Fox* (1994), 69 Ohio St.3d 183, 190, 631 N.E.2d 124, 130. We again recognize the constitutionality of these statutes.

## IX

**{¶ 86}** In Proposition of Law XXXIII, appellant challenges various aspects of the statutorily mandated proportionality review. We have previously rejected similar arguments. See *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus; *State v. DePew* (1988), 38 Ohio St.3d 275, 291, 528 N.E.2d 542, 558-559.

## X

**{¶ 87}** Pursuant to statute, we have conducted an independent proportionality review. After conducting this review and comparing appellant's case with other cases involving aggravated robbery and aggravated murder, we find that appellant's death sentence is proportionate and not excessive. Accordingly, we also overrule Proposition of Law XXVII. See *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754; *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55.

XI

{¶ 88} Finally, we will undertake an independent review of the aggravating circumstance and mitigating factors.

{¶ 89} The aggravating circumstance in this case is that appellant, acting as the principal offender, committed the murder of Wayman Hamilton while appellant was committing or attempting to commit an aggravated robbery. The jury concluded, and we concur, that the prosecution proved this circumstance beyond a reasonable doubt.

{¶ 90} With respect to the statutory mitigating factors, the evidence does not show that Wayman Hamilton "induced or facilitated" the offense, nor does the evidence show that appellant was under duress, coercion or strong provocation. Therefore, R.C. 2929.04(B)(1) and (2) are inapplicable. Additionally, there is evidence of a significant history of prior convictions and delinquency adjudications. Accordingly, we give R.C. 2929.04(B)(5) little weight. R.C. 2929.04(B)(6) is inapplicable, as appellant was the principal offender in the aggravated robbery and aggravated murder of Wayman Hamilton. R.C. 2929.04(B)(4) is a significant mitigating factor, as appellant was eighteen at the time of the offense.

{¶ 91} With respect to R.C. 2929.04(B)(3), appellant presented evidence at trial by Dr. Weaver, a board-certified psychiatrist, who remained unshaken in his opinion that the appellant is a paranoid schizophrenic. The doctor testified that appellant's condition played a role in appellant's actions on the night of the Wayman Hamilton murder, as well as in the past. The doctor did not testify that appellant's condition caused him to lack the substantial capacity to appreciate the criminality of his conduct. The doctor did state that appellant did not have the psychological defenses necessary to enable appellant to "conform his conduct to the usual requirements that you or I might have." We do not believe that this testimony is sufficient to support a finding that R.C. 2929.04(B)(3) should be given weight in

29

mitigation. However, we will give weight to appellant's mental state under R.C. 2929.04(B)(7).

{¶ 92} This case has some similarity to *State v. Claytor* (1991), 61 Ohio St.3d 234, 574 N.E.2d 472. In that case, this court reversed a death sentence where the evidence showed that the defendant's schizophrenia left him without substantial capacity to conform his conduct to the requirements of the law. During the penalty phase of his trial, a psychiatrist and psychologist testified that Claytor's mental illness was always with him and that it sometimes erupted in violent episodes. These episodes usually resulted in Claytor's mother committing him to a mental hospital. From 1982 to 1986, Claytor had been committed to the Cleveland Psychiatric Institute four times and the Veterans Administration Medical Center eight times for treatment of his schizophrenia. In between these commitments, Claytor had nine other visits to hospital emergency rooms in Cleveland.

{¶ 93} *Claytor* is distinguishable on its facts from this case. Dr. Weaver never testified that appellant's schizophrenia had progressed to the point that he lacked substantial capacity to conform his conduct to the requirements of the law. Additionally, Claytor's disease appears to have been more severe in character.

{¶ 94} Other mitigating factors, considered under R.C. 2929.04(B)(7), include appellant's relationship with his mother and grandmother, his problems dealing with his natural father's denial of his parentage, and appellant's expression of remorse for the grief suffered by the victim's family.

{¶ 95} Independently weighing the aggravating circumstance against the mitigating factors, we find the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

## XII

{¶ 96} Having undertaken the three-prong analysis mandated by R.C. 2929.05 and concluding that the sentence is both proportionate to like cases where the death penalty has been affirmed and that the aggravating circumstance

outweighs the mitigating factors beyond a reasonable doubt, we affirm appellant's conviction and sentence of death.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

_____

APPENDIX

{¶ 97} "Proposition of Law No. I:  It is prejudicial error in a capital case to join for trial two separate offenses occurring at different times and places.  Joinder of unrelated offenses denies a capital defendant the right to a trial and sentencing which is both fair and reliable, in contravention of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶ 98} "Proposition of Law No. II:  Appellant Williams' death sentence was a product of the jury's consideration of evidence that was not relevant to the aggravating circumstances charged against him or the nature and circumstances of the charged capital crime in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

{¶ 99} "Proposition of Law No. III:  An appellate court must have the complete record of a capital case in order to adequately review the case pursuant to Ohio Rev. Code Ann. Section 2929.05.  This court's denial of appellant Williams' requests to supplement the record of his case to ensure a complete record deprived appellant of his rights to effective assistance of counsel, equal protection, due process of law and meaningful appellate review under the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2, 10, and 16 of the Ohio Constitution.

{¶ 100} "Proposition of Law No. IV:   The jury and trial court's consideration of duplicative aggravating circumstances tipped the weighing process

against the appellant, destroyed the reliability of the sentencing process and resulted in the arbitrary and capricious imposition of the death sentence in violation of the Eighth and Fourteenth amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution. Further, the court of appeals' consideration of the duplicative specifications eradicated the reliability of its Ohio Rev. Code Ann. Section 2929.05 review.

{¶ 101} "Proposition of Law No. V: When the jury at the penalty phase returns its verdict after announcing a stalemate and before the trial court can instruct, and one of the jurors then expresses hesitancy in the jury poll, the trial court has a duty to make further inquiry of the jury. Failure to make such an inquiry violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

{¶ 102} "Proposition of Law No. VI: Misconduct by the government's attorneys throughout appellant Williams' capital trial deprived him of his rights to due process, a fair trial and a fair and reliable determination of his guilt and sentence as guaranteed by the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

{¶ 103} "Proposition of Law No. VII: It was improper for the trial court, at the guilt phase of appellant's capital case, to refer to the penalty phase when that reference communicated to the jury appellant's guilt. Those references violated the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 104} "Proposition of Law No. VIII: A capital defendant is entitled to have a judge preside over his capital trial who has not predetermined his guilt. A capital trial conducted by a judge who has predetermined guilt violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 105} "Proposition of Law No. IX: A capital defendant is denied the right to adequate appellate review when the trial court refuses to order a state's witness's statement to be preserved in the records of the court so as to be made available to the appellate court upon appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

{¶ 106} "Proposition of Law No. X: At the penalty phase of a capital case, defense counsel must be permitted to argue the defendant's reaction to the guilt verdict. The reaction constitutes relevant, mitigating evidence under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 2, 9, 10 and 16 of the Ohio Constitution.

{¶ 107} "Proposition of Law No. XI: The out-of-court identification procedures used to implicate Clifford Williams for the murder of Wayman Hamilton and the shooting of Jeff Wallace were unduly suggestive. The subsequent in-court identifications were not independently reliable, and so the failure to suppress the identification evidence deprived appellant Williams of his due process rights as guaranteed by Article I, Sections 9, 10, and 16 of the Ohio Constitution; and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

{¶ 108} "Proposition of Law No. XII: When irrelevant and highly inflammatory evidence is presented at the guilt phase of a capital trial it taints the guilt phase and operates to deny the capital defendant a fair trial.

{¶ 109} "Proposition of Law No. [XIII]: The failure to exclude misleading firearms identification evidence whose prejudicial effect was compounded by inaccurate prosecutorial argument violated appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

{¶ 110} "Proposition of Law No. XIV: Clifford Williams was unfairly prejudiced by the inclusion of an alias in his indictment, and references to that alias

during trial. Because the alias was not necessary for connecting him to the acts charged, the inclusion and use of that alias deprived appellant Williams of his due process rights guaranteed by Article I, Sections 9 and 16 of the Ohio Constitution and the Eighth and Fourteenth Amendments of the United States Constitution.

{¶ 111} "Proposition of Law No. XV: The trial court's failure to suppress illegally obtained evidence for want of standing was erroneous. The court did not consider, no[r] did Clifford Williams' defense counsel argue, the proper standard for determining one's standing to challenge the validity of a search. Hence, Clifford Williams was deprived of his rights guaranteed by Article I, Sections 9, 10 and 14 of the Ohio Constitution and the Fourth, Sixth, and Eighth Amendments to the United States Constitution.

{¶ 112} "Proposition of Law No. XVI: The trial court's actions during appellant's trial prevented appellant from receiving a fair trial and violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article I, Section 9, 10 and 16 of the Ohio Constitution.

{¶ 113} "Proposition of Law No. XVII: A capital defendant is denied the right to a fair and impartial trial and adequate appellate review of his conviction when the trial court refuses to order the prosecutor's file to be sealed for *in camera* review in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I, of the Ohio Constitution.

{¶ 114} "Proposition of Law No. XVIII: The Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution require the state to produce sufficient evidence to prove every essential element of the crime beyond a reasonable doubt. If sufficient evidence is not presented, the accused must be acquitted of the charge.

{¶ 115} "Proposition of Law No. XIX: The instructions the trial court gave during the course of appellant Williams' trial violated appellant's constitutional

rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 116} "Proposition of Law No. XX:  Queries by the trial court during group voir dire as to whether appellant's jurors would be embarrassed to return a not guilty verdict violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 117} "Proposition of Law No. XXI:  The trial court failed to ensure that the jury selection process accorded Mr. Williams his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 9, 10 and 16 of the Ohio Constitution.

{¶ 118} "Proposition of Law No. XXII:  The Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Sections 9, 10 and 16, Article I of the Ohio Constitution and Section 2945.25(C) of the Ohio Revised Code Section [*sic*] guarantee an accused a fair trial and an impartial jury.  The trial court's exclusion of potential juror Ronald Partin denied appellant these constitutional guarantees.

{¶ 119} "Proposition of Law No. XXIII:   The trial court's denial of appellant's request for expert assistance to prepare for the sentencing phase of his trial violated appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I, of the Ohio Constitution.

{¶ 120} "Proposition of Law No. XXIV:  The trial court's instructions at the penalty phase of appellant's capital trial were constitutionally infirm.   The instructions violated the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

**{¶ 121}** "Proposition of Law No. XXV:  The trial court's instructions and the state's voir dire discussion on reasonable doubt, violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 9, 10 and 16 of the Ohio Constitution.

**{¶ 122}** "Proposition of Law No. XXVI:  The trial court's comments at appellant's sentencing hearing and its opinion issued after the hearing contain irrelevant and improper considerations for sentencing Mr. Williams to death.  These considerations violated appellant Williams' constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

**{¶ 123}** "Proposition of Law No. XXVII:  The sentence of death imposed on appellant Williams is unreliable and inappropriate.  The death sentence in his case violates the Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05.

**{¶ 124}** "Proposition of Law No. XXVIII:  The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 5, 9, and 16, Article I of the Ohio Constitution, guarantee a capital defendant an impartial determination by the jury at his guilt and mitigation phases.  To commit jurors to a death verdict during individual voir dire violates these constitutional guarantees.

**{¶ 125}** "Proposition of Law No. XXIX:  The prosecutor's systematic use of peremptory challenges to exclude all prospective jurors with some reservations about the death penalty violated appellant Williams' right to equal protection and a fair and impartial jury in a capital case under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 5, 10 and 16 of the Ohio Constitution.

{¶ 126} "Proposition of Law No. XXX:  Defense counsel's actions and omissions at Mr. Williams' capital trial deprived him of the effective assistance of counsel as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 127} "Proposition of Law XXXI:  The failure to raise or adequately address substantial capital and other well-established criminal law issues on appeal as of right deprives the capital defendant of the effective assistance of appellant [*sic*] counsel and the meaningful appellate review of a capital conviction guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05.

{¶ 128} "Proposition of Law No. XXXII:  Ohio's mandatory capital sentencing scheme prevented the jury from deciding whether death was the appropriate punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.

{¶ 129} "Proposition of Law No. XXXIII:  The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05, guarantee a convicted capital defendant a fair and impartial review of his death sentence.  The statutorily mandated proportionality process in Ohio does not comport with the constitutional requirement and thus is fatally flawed.

{¶ 130} "Proposition of Law No. XXXIV:  The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 19 and 16 of the Ohio Constitution establish the requirements for a valid death penalty scheme.  Ohio Rev. Code Ann. Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.05 and 2929.05 [*sic*], Ohio's statutory

provisions governing the imposition of the death penalty, do not meet the prescribed constitutional requirements and are unconstitutional both on their face and as applied."