[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Larry Caldwell, Jr. appeals from his convictions and sentencing on charges of possession of cocaine, possession of marihuana, and having weapons while under a disability. For the reasons that follow, the judgment of the trial court will be affirmed.
On February 21, 1997, Detective Joseph Oldham of the Dayton Police Department executed an affidavit for purposes of obtaining a search warrant. In that affidavit, Detective Oldham stated that he had been contacted on February 10, 1997 by a confidential and reliable informant, who advised Oldham that the defendant, Larry Caldwell, Jr., was selling crack cocaine and guns from an apartment located at 2013 West Grand Avenue. Oldham also described in his affidavit two instances in which the confidential informant, at Oldham's direction, went to 2013 West Grand Avenue and purchased quantities of crack cocaine from Caldwell. The material purchased by the confidential informant was field tested by Oldham and yielded positive results for the presence of cocaine. These "controlled buys" of cocaine occurred on February 10, 1997 and February 19, 1997. In connection with the February 10, 1997 purchase, the informant also advised Oldham of having observed a semi-automatic pistol in Caldwell's pocket.
Based upon Oldham's affidavit, a search warrant was signed by a Dayton Municipal Court judge on February 21, 1997. The warrant authorized a search of the first floor apartment located at 2013 West Grand Avenue, as well as of the defendant. Pursuant to the warrant, a search was conducted of the premises on February 21, 1997. During that search, drugs and weapons were found. Caldwell allegedly confirmed to the police that the drugs belonged to him.
On March 21, 1997, Caldwell was indicted on one count of possession of crack cocaine in an amount exceeding 100 grams in violation of R.C. 2925.11 (A). That count of the indictment carried with it a "major drug offender" specification. In addition, the indictment also charged Caldwell with one count of possession of marihuana in an amount between 200 and 1000 grams in violation of R.C. 2925.11 (A), and two counts of having weapons while under a disability in violation of R.C. 2923.13 (A) (3).
On March 31, 1997, Caldwell filed a motion to suppress the evidence seized during the above-referenced search. Caldwell argued that no probable cause existed for the search and cited a number of alleged deficiencies in the search warrant and/or in the affidavit used to obtain that warrant. Caldwell also sought to have suppressed any statements he made at the time of the search, alleging that the rights afforded to him by Miranda v. Arizona
(1966), 384 U.S. 436, had been violated. On July 21, 1997, the trial court overruled Caldwell's motion to suppress, concluding that the search warrant was supported by probable cause and that Caldwell had been given proper Miranda warnings.
Caldwell's counsel subsequently withdrew from the case and new counsel was appointed to represent Caldwell. On October 15, 1997, Caldwell's new counsel moved for an order that would require the State to reveal the name of the confidential informant referred to in the affidavit that was used to obtain the search warrant. In support of this motion, Caldwell denied that he had sold any crack cocaine to anyone on February 10, 1997 or February 19, 1997, and that accordingly, either the confidential informant or Detective Oldham was not being truthful.
On October 17, 1997, Caldwell's new counsel filed a second motion to suppress the evidence obtained during the search of the premises at 2013 West Grand Avenue. In this motion, Caldwell alleged that "the affidavit in support of the search warrant contained false material made knowingly or with reckless disregard, and the affidavit's remaining content was insufficient to establish probable cause." Specifically, as in his motion to require disclosure of the name of the confidential informant, Caldwell alleged that he did not sell cocaine on February 10 or 19, 1997, and that either the informant or the affiant misrepresented facts in obtaining the warrant. In addition, Caldwell again asserted that he was not given his Miranda rights prior to being questioned by the police.
At a hearing concerning Caldwell's motions, Caldwell testified that Yvette Rackley lived in the downstairs apartment at 2013 West Grand Avenue, the location that was searched. See Transcript of Proceedings (Nov. 17, 1997), at 33. Caldwell testified that Rackley is the mother of his children and that on the day of the search, he was at the location to visit his children. Id. Caldwell testified that he did not reside at that location. Id., at 38. He denied that he had items of clothing in a bedroom at that location. Id., at 39. He also denied that there was any paperwork in a bedroom with his name on it. Id., at 41. Based on this testimony, the State moved to dismiss, or overrule, Caldwell's motion to suppress, arguing that the defendant lacked standing to object to the search of the premises.
The trial court overruled Caldwell's second motion to suppress evidence and his motion to require disclosure of the identity of the confidential informant. The court concluded that probable cause existed to support the issuance of the search warrant. The court found, inter alia, that the warrant was sufficiently specific as to the location to be searched. Concerning the confidential informant, the court concluded that revealing the informant's identity would not assist Caldwell in defending himself at trial and that even if the informant lied to the police, there was no evidence that the police knew, or should have known, of that fact. The court thus concluded that Caldwell had not made a substantial showing that the affidavit for the warrant was false or was made with any knowledge of any falsity or with reckless disregard for the truth. Finally, the court concluded that Caldwell had been given Miranda warnings before he made a statement confirming that the drugs were his and that consequently, suppression of that statement was not required.[1]
In its decision overruling Caldwell's second motion to suppress and his motion for disclosure of the identity of the confidential informant, the court also concluded that Caldwell lacked standing to challenge the search of the premises and the search warrant. The court cited the testimony that Caldwell had given at the suppression hearing in which he indicated that he did not live at 2013 West Grand Avenue, that he did not have any clothing there, and that he was merely there to visit his children.
Following plea negotiations, Caldwell entered a plea of no contest to the various charges against him. As a part of the negotiations, the "major drug offender" specification to the possession of crack cocaine charge was deleted. The court subsequently found Caldwell guilty of the remaining charges against him. The court sentenced Caldwell to five years imprisonment on the possession of crack cocaine charge, and twelve months imprisonment each on the possession of marihuana charge and the two weapons under disability charges. The court ordered the sentences to be served concurrently.
Caldwell filed a timely notice of appeal of the court's judgment. He now presents two assignments of error for our review, which state:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING APPELLANT'S MOTION FOR DISCLOSURE OF A CONFIDENTIAL INFORMANT SINCE SAID DECISION VITIATED HIS RIGHT TO CHALLENGE THE ILLEGAL AND UNCONSTITUTIONAL SEARCH AND SEIZURE OF THE RESIDENCE WHERE CONTRABAND WAS FOUND.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO SUPPRESS ALL DRUGS AND OTHER CONTRABAND RECOVERED IN A POLICE SEARCH PURSUANT TO A SEARCH WARRANT ILLEGALLY AND UNCONSTITUTIONALLY ISSUED.
In both of these assignments of error, Caldwell seeks to challenge the validity of the search warrant that authorized the search of the premises in question. In the first assignment of error, Caldwell argues that the trial court's failure to order disclosure of the identity of the confidential informant prevented him from challenging the legality and constitutionality of the search warrant. Caldwell contends that in the absence of that disclosure, he was unable to challenge or impeach the veracity of the sworn statements contained in the police officer's affidavit that was used to obtain the search warrant. In the second assignment of error, Caldwell contends that the search warrant was issued without probable cause because of certain alleged deficiencies in the police officer's affidavit, including the failure to specify the time of day when the confidential informant allegedly purchased drugs from the defendant and the particular apartment unit within 2013 West Grand Avenue from which those drugs were allegedly purchased.
As noted above, the trial court rejected each of these two challenges below, concluding that disclosure of the confidential informant was not required and that probable cause existed to support the issuance of the search warrant. In addition, with respect to each of these two claims, the court concluded that Caldwell lacked standing to challenge the search and the search warrant. On appeal, although Caldwell has challenged the trial court's merit determination concerning disclosure of the identity of the confidential informant and whether the search warrant was issued on probable cause, he has failed to address the trial court's conclusion that he lacked standing to present these challenges to the search warrant. Caldwell has not asked us to review the trial court's determination of the standing issue and has assigned no error with respect to the court's conclusion in that regard.
The trial court's conclusion that Caldwell lacks standing is independently dispositive of his challenges to the search warrant. Caldwell's failure to appeal the trial court's determination regarding standing necessarily requires us to overrule the two assignments of error he has presented. That is, even if we were to conclude that Caldwell's assignments of error were otherwise meritorious, we nevertheless would be compelled to conclude that the court's errors were harmless in view of its unchallenged determination that Caldwell lacked the requisite standing to challenge the search warrant and subsequent search of the premises. Moreover, we would agree with the trial court's determination of the standing issue, even if Caldwell had assigned error in that regard.
In order to assert that evidence obtained during a search must be excluded because the search was allegedly conducted in violation of the Fourth Amendment, courts have traditionally required that a defendant have "standing" to assert the Fourth Amendment violation. The United States Supreme Court has instructed that the standing requirement "is more properly subsumed under substantive Fourth Amendment doctrine. * * * [W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." Rakas v. Illinois (1978), 439 U.S. 128,139.
"`Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' * * * A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. * * * And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, * * * it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." Id., at 133-134 (citations omitted). Thus, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one which has `a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Minnesota v.Carter (1998), 525 U.S. ___, 142 L.Ed.2d 373, 379, quoting Rakas,supra, at 143-144, n. 12.
As the Ohio Supreme Court has summarized:
 The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable. The burden is upon the defendant to prove facts sufficient to establish such an expectation.
State v. Williams (1995), 73 Ohio St.3d 153, 166.
The United States Supreme Court has recognized that "status as an overnight guest is alone enough to show that [a defendant] had an expectation of privacy in the home that society is prepared to recognize as reasonable." Minnesota v. Olson (1990),495 U.S. 91, 96-97. More recently, the Court considered whether a defendant who was present in another's apartment for the purpose of bagging cocaine had a legitimate expectation of privacy in that apartment. The Supreme Court essentially distinguished Olson, concluding that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." Minnesota v.Carter, supra, 142 L.Ed.2d at 380. The Court continued:
 Respondents here were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours. There is no suggestion that they had a previous relationship with Thompson [the lessee of the apartment], or that there was any other purpose to their visit. Nor was there anything similar to the overnight guest relationship in Olson to suggest a degree of acceptance into the household. While the apartment was a dwelling place for Thompson, it was for these respondents simply a place to do business.
* * *
If we regard the overnight guest in Minnesota v. Olson as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely "legitimately on the premises" as typifying those who may not do so, the present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights.
Id., at 380-381 (footnote omitted).
On the record before us, Caldwell failed to meet his burden of proof to demonstrate that he had a legitimate expectation of privacy in the premises searched. Caldwell denied that he lived at that location, that he kept any clothing there, and that there was any paperwork at the location with his name on it. He offered no affirmative evidence that might establish a degree of acceptance into the household, such as testimony that he stayed overnight there, or that he had regular access to, or use of, the premises. Caldwell did testify that the resident of the premises, Ms. Rackley, was the mother of his children and that on the day of the search, he was there to visit his children. However, we are not prepared to conclude that this fact, standing alone, created in Caldwell the requisite expectation of privacy in the premises that would permit him to assert a violation of his Fourth Amendment rights. Caldwell offered no evidence as to the nature of his current relationship with Ms. Rackley or the children, how frequently he visited the children at the location, how long this particular visit lasted, whether he was asked by Rackley on this occasion to visit the children, or indeed, even whether the visit was a welcomed one.
At most, the evidence Caldwell presented inferentially established that he was legitimately on the premises. It did not, however, permit Caldwell to meet his burden of proving that he had a reasonable expectation of privacy in those premises. Indeed, the evidence Caldwell presented seemed to be designed to distance him as much as possible from the premises searched. Accordingly, had we been asked to directly address the matter, we would conclude that the trial court did not err in determining that Caldwell lacked "standing" to assert a Fourth Amendment violation.
Caldwell's two assignments of error are overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Andrew T. French
J. Allen Wilmes
Hon. Patrick J. Foley
[1] Caldwell has not raised on appeal any issue in connection with Miranda warnings.