[Cite as *State v. Malone*, 2012-Ohio-449.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellant,            :       Case No.   11CA2 & 11CA3

    vs.                             :

JEFF T. MALONE,                         :       DECISION AND JUDGMENT ENTRY


    Defendant-Appellee.             :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Laina Fetherolf, Hocking County Prosecuting Attorney, and
William L. Archer Jr., Hocking County Assistant
Prosecuting Attorney, 88 South Market Street, Logan, Ohio
43138

COUNSEL FOR APPELLEE:       Timothy P. Gleeson, Gleeson Law Office, 47 Market
Street, Ste. 204, P.O. Box 148, Logan, Ohio 43138

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-2-12

ABELE, P.J.

    **{¶ 1}**   This is an appeal from a Hocking County Common Pleas Court judgment that

granted a motion in limine and ordered the suppression or exclusion of certain evidence from the

trial of Jeff T. Malone, defendant below and appellee herein.   The State of Ohio, plaintiff below

and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT
> SUPPRESSED THE MEDICAL DIAGNOSIS TESTIMONY OF
> THE CHILDREN'S HOSPITAL SOCIAL WORKER."

{¶ 2}   On August 14, 2008, Lois Stepney, a Social Worker with the Columbus Children's Hospital Child Advocacy Center (CAC) interviewed K.D., a minor child.   K.D. reportedly told her mother that appellant had touched her in her vaginal area[1] and this information was, somehow, conveyed to Stepney.[2]   On June 17, 2010, Jennifer Westgate, also a CAC Social Worker interviewed N.H., another minor child.   The child apparently made "disclosures" of a nature that prompted further action against appellant.

{¶ 3}   On August 13, 2010, the Hocking County Grand Jury returned an indictment that charged appellant with (1) two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), and (2) two counts of sexual imposition in violation of R.C. 2907.06(A)(1). Initially, appellant agreed to plead guilty to two counts of sexual imposition in exchange for the dismissal of the gross sexual imposition charges.   However, on November 12, 2010 the trial court granted appellant's motion to withdraw his guilty pleas.   A month later, appellant filed a motion and sought to exclude any evidence that arose from the two CAC interviews.   Appellant argued that this particular evidence is "testimonial" and, thus, impermissible under a recent Ohio Supreme Court decision.   See State v. Arnold, 126 Ohio St.3d 290, 933 N.E.2d 775, 2010-Ohio- 2742.   At the January 18, 2011, hearing on the motions, the social workers who conducted the interviews testified and, later that day, the trial court granted appellant's motion. The court found, after hearing witness testimony and reviewing DVDs of the interviews, that the

---

[1]   Appellant is the mother's cousin and was, apparently, babysitting K.D. at the time of the incident.

[2]   It is not clear from the record whether this information was conveyed to Lois Stepney by K.D. herself or by K.D.'s mother.

interviews "were not performed for medical diagnosis or treatment[.]"[3]

{¶ 4} The appellant asserts that the trial court erred by granting appellee's motion.   Our analysis begins with a recitation of the appropriate standard of review.   As the appellant correctly notes, rulings on motions in limine are typically reviewed under an abuse of discretion standard.   See State v. Black, 172 Ohio App.3d 716, 876 N.E.2d 1255, 2007-Ohio-3133, at ¶11; State v, Williams, Lucas App. Nos. L–10–1019, L–10–1020 L–10–1021, 2011-Ohio-2702, at ¶29.   The term "abuse of discretion" means more than an error of law or judgment; rather, it implies that a trial court's attitude is unreasonable, arbitrary or unconscionable.   See State v. Herring (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940; State v. Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331; State v. Adams (1980), 60 Ohio St.2d 151, 157, 404 N.E.2d 144.   In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court.   See State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.

{¶ 5} We believe that the Ohio Supreme Court's recent case in Arnold, supra, is dispositive of the case sub judice.   In Arnold,   the Court reviewed evidence obtained through the same procedures used in this case.   In other words, Arnold dealt with interviews conducted

---

[3]From that order, the appellant filed both a motion for leave to appeal (11CA2) and a notice of appeal (11CA3).   On February 18, 2011, this Court issued an entry that noted that the appellant could appeal as of right and, thus, its motion for leave had been rendered moot.   We now consolidate these cases and proceed to review the assignment of error on its merits.

Additionally, although the appellant and the trial court treated the motion as a motion in limine which, generally, would not constitute a final appealable order because even if the motion is granted pre-trial a party must nevertheless raise an objection at trial to preserve any error, in criminal cases the prosecution may immediately appeal the granting of a pre-trial motion, however labeled, that may restrict the state in the presentation of evidence and is, in essence, a motion to suppress evidence.   See Crim.R. 12(J); State v. Davidson (1985), 17 Ohio St.3d 132, 477 N.E.2d 1141.

by Columbus Children's Hospital CAC social workers.   The Ohio Supreme Court also detailed

the manner in which the interviews were conducted:

> "The objective of a child-advocacy center like the CCFA is neither exclusively
> medical diagnosis and treatment nor solely forensic investigation. 'The purpose of
> a Children's Advocacy Center is to provide a comprehensive, culturally
> competent, multidisciplinary response to allegations of child abuse in a dedicated,
> child friendly setting.'

'Prior to the development of the Children's Advocacy Center model, 'traditional child abuse investigations often subject(ed) the child to multiple interviews.' A child-advocacy center's 'number one goal' is to reduce trauma to a child-abuse victim by coordinating the interview to include professionals from multiple agencies, which, in turn, can reduce the number of interviews needed and improve the quality of the investigation, the diagnosis, and the recommendation for treatment. Additionally, '[t]hey help children avoid the trauma of repeating their story at various stops along the legal and judicial path.' These interdisciplinary teams often include law-enforcement professionals, prosecutors, medical and mental-health personnel, and child advocates.

At the CCFA, Marshall, a social worker employed by Nationwide Children's Hospital, interviews children who are suspected victims of physical or sexual abuse. The purpose of the interview is to gather as much information as possible. The interview is both recorded on a DVD and transmitted to another room via closed-circuit television. Typically, a nurse practitioner or doctor, a children's services caseworker, and a law-enforcement representative watch the interview from a separate room. Marshall does not inform the child that the team members are watching the interview, but does tell him or her that he or she will be examined by a doctor or nurse after the interview.

After Marshall interviews the child, she meets with the doctor or nurse practitioner who will perform the medical examination to review the child's statements. The nurse or doctor conducts the appropriate medical examination based on the child's statements during the interview. The nurse or doctor relies on information obtained during Marshall's interview to determine what examination and tests are needed. For example, information regarding the identity of the perpetrator, the age of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to determine whether to test the child for sexually transmitted infections." (Citations omitted.) Id. at ¶¶ 29-32.[4]

---

[4]  The acronym "CCFA," to which the Ohio Supreme Court refers in the Arnold case, stands for the "Center for Child and Family Advocacy." See http://www.nationwidechildrens.org/ccfa.     We presume this encompasses the CAC and will continue to refer to it as CAC in order to remain consistent with the testimony of the two social workers.

{¶ 6}    The Ohio Supreme Court held that, to the extent the evidence obtained during the interviews was to assist police in a "forensic investigation" of abuse, it is "testimonial" and, thus, the Confrontation Clause of the Sixth Amendment bars its introduction at trial. Id. at ¶36. However, to the extent that evidence is obtained to medically diagnose and treat a child, the evidence is non-testimonial and not barred from admission at trial.   Id. at ¶41.

{¶ 7}    The procedural distinction between the case at bar and Arnold is that in Arnold, there does not appear to have been any factual determination as to whether the evidence obtained during the interviews was testimonial or non-testimonial.   In the case sub judice, however, the trial court explicitly found that the interviews "were not performed for medical diagnosis or treatment[.]" Thus, this particular evidence is testimonial in nature and to reverse the trial court's judgment, we would be required to overturn that factual finding.

{¶ 8}    Our review of the two interviews reveals that although Stepney and Westgate testified as to the general procedures used when interviewing potential victims of sexual abuse, their testimony was rather vague as it pertains to the examination of K.D. and N.H.   Moreover, although evidence showed that K.D. had a "redness in the vaginal area not present before," Westgate gave no testimony concerning medical problems with N.H.   Insofar as the redness in K.D.'s vaginal area was concerned, Stepney testified that K.D.'s mother took her to another doctor before she brought her to CAC to determine if a "yeast infection" was present.   This suggests that a medical or diagnostic exam was performed of K.D. before she appeared at CAC. In short, we find little evidence to support the view the CAC interviews were performed for the diagnosis or treatment of a medical condition.   Here, the trial court, sitting as the trier of fact, had the duty to assess witness credibility and assign whatever weight it deemed appropriate.   See

State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v. Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721.   The justification for this view is obvious: a trier of fact is in the best position to view witnesses, to observe their demeanor, gestures and voice inflections and to use those observations to weigh witness credibility.   See Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.   Here, with respect to Stepney and Westgate, the court may not have believed the sum total of their testimony.   It is axiomatic that a trier of fact is not required to accept even uncontroverted testimony from any witness if it chooses not to do so.   We also emphasize that had the members of this court served as the trier of fact, it is possible that we would not have come to the same conclusion.   Nevertheless, we again note that our function as an appellate court is to serve as a court of review and we must defer to the trier of fact when determining issues of fact.

{¶ 9}   In sum, we find no reason in the case sub judice to reverse the trial court's factual finding that the interviews "were not performed for medical diagnosis and treatment[.]" Consequently, the evidence is testimonial and, pursuant Arnold, inadmissible.   Accordingly, we hereby overrule the appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.


JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Kline, J.: Concur in Judgment & Opinion

                                                      For the Court

                                    BY:_____
                                    Peter B. Abele
                                    Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.