[Cite as *State v. Jennings*, 2015-Ohio-134.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals Nos. L-13-1178 |
| Appellee | |
| | Trial Court Nos. CR0201202661 |
| v. | |
| Keshawn Jennings | **DECISION AND JUDGMENT** |
| Appellant | Decided: January 16, 2015 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Spiros P. Cocoves, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, sentencing appellant, Keshawn Jennings, to life in prison, and ordering him to pay

the "costs of supervision, confinement, assigned counsel, and prosecution as authorized by law." For the following reasons, we affirm, in part, and reverse, in part.

## A. Facts and Procedural Background

{¶ 2} This case arises from a murder that occurred on August 9, 2012, at the Moody Manor apartments in Toledo, Ohio. On that night, Naomi Reed was inside her apartment with several others including her great-grandchildren, K.H. and L.H. At the time of the murder, the children were sleeping on the floor of the apartment in front of an air conditioner. Awoken by gunshots, K.H. sat up and was shot in the head. L.H. was also shot in the incident. The children were rushed to St. Vincent's hospital. L.H. was treated for a gunshot wound in the chest and abdomen, and was permitted to go home several days later. Tragically, K.H. never regained consciousness and died as a result of the gunshot wound to her head. K.H. was one year old at the time of the shooting.

{¶ 3} Two Moody Manor residents, Cassandra Wells and Demetria Johnson, along with Wells's boyfriend, Brandon Lino, witnessed two men flee the scene and make their way into a moving minivan. The witnesses testified that one of the men was wearing a red and white hat, a white tee shirt, black jogging pants, and a black hoodie. The other man was described as wearing a red tee shirt underneath a black hoodie.

{¶ 4} Immediately following the shooting, Johnson phoned 911 and an officer from the Toledo Police Department, Paul Marchyck, responded to the scene. Marchyck secured the crime scene and discovered shell casings outside the apartment. Approximately 15 minutes later, another officer, Jason Lenhardt, arrived on the scene to

2.

investigate the shooting. By this time, the weather had taken a turn for the worse, and Lenhardt was forced to conduct his investigation under heavy rainfall. While the rainfall did hamper Lenhardt's investigation, he was nonetheless able to recover a bullet from an adjacent apartment, as well as a 9 mm cartridge, fragments of copper jacketing, and multiple shell casings, both 9 mm and .40 caliber. Eventually, two additional 9 mm casings and one .40 caliber casing were retrieved from the scene.

{¶ 5} While Lenhardt was conducting his investigation outdoors, detective Scott Smith focused on the interior of the apartment where the victims were located. As he made his way through the apartment, Smith discovered several more bullets and shell casings. Lenhardt also investigated the van that was allegedly used as a getaway vehicle. Inside the van, Lenhardt located a red and black Chicago Bulls hat, a dark blue hoodie, a black hoodie, and traffic citations that were previously issued to appellant. Upon subsequent execution of a search warrant at appellant's house, police recovered another black hooded sweatshirt and a pair of black sweatpants, and a red shirt was seized from appellant after he was interviewed by detectives.

{¶ 6} Ultimately, police determined that appellant was one of the men involved in the shooting. Consequently, on October 10, 2012, an 11-count indictment was handed down charging appellant, along with two other codefendants, Antwaine Jones, and James Moore, with one count of aggravated murder in violation of R.C. 2903.01(C) and (F), one count of murder in violation of R.C. 2903.02(B), two counts of attempt to commit aggravated murder in violation of R.C. 2923.02 and 2929.23.01(C) and (F), four counts

3.

of felonious assault in violation of R.C. 2903.11(A)(2), two counts of attempt to commit murder in violation of R.C. 2923.02 and 2903.02, and one count of improper discharging of a gun into a habitation in violation of R.C. 2923.161(A)(1). In addition to the offenses charged, the indictment contained a firearm specification on each count.

{¶ 7} Appellant entered a plea of not guilty, and a trial was scheduled for December 10, 2012. This date was continued several times at the defendants' requests. Eventually, Moore pleaded guilty to manslaughter in exchange for his testimony at appellant's trial.

{¶ 8} Prior to trial, appellant filed a number of motions, including a motion on December 11, 2012, to have the state's file sealed and made available for appellate review. The trial court denied appellant's motion on January 10, 2013. Additionally, on December 12, 2012, appellant filed a motion to suppress statements he made to law enforcement officers. This motion was granted, in part, on May 7, 2013. In its order, the trial court suppressed only those statements appellant made prior to waiving his Miranda rights.

{¶ 9} Following extensive pretrial proceedings, the trial in this case began on June 24, 2013. Multiple witnesses testified at trial, including Moore. In his testimony, Moore indicated that he and his codefendants were members of the Bloods street gang. He acknowledged that he was the driver of the van. Moore also testified that appellant was one of the men responsible for the shooting, which was intended for a man affiliated with a rival gang, the Crips.

4.

{¶ 10} Upon conclusion of the trial on July 5, 2013, the jury returned a guilty verdict on all counts, and the matter was continued for sentencing. Before sentencing, the trial court granted the state's motion to dismiss Counts 3, 5, and 9.

{¶ 11} A sentencing hearing was held on July 23, 2013, wherein the trial court imposed a sentence of life in prison as to Count 1, 8 years in prison on Counts 4, 6, 8, and 10, and 11 years in prison on Count 7. Additionally, the trial court imposed one-year prison sentences on each count pursuant to the firearm specifications. The court merged Count 2 with Count 1. The court further ordered the sentences on Counts 1 and 4, along with their attendant firearms specifications, served consecutively with each other. The court directed that the remaining sentences should be served concurrently with each other and concurrently with Counts 1 and 4. In sum, the court imposed a sentence of life in prison with parole eligibility after 40 years. Further, appellant was ordered to pay the costs of supervision, confinement, assigned counsel, and prosecution, as well as the costs assessed pursuant to R.C. 9.92(C), 2929.18, and 2951.021. Appellant's timely notice of appeal followed.

### B. Assignments of Error

{¶ 12} On appeal, appellant raises the following assignments of error for our review:

ASSIGNMENT OF ERROR NUMBER ONE: The trial court erred to the prejudice of Mr. Jennings by failing to excuse a sleeping juror in

violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

ASSIGNMENT OF ERROR NUMBER TWO: Trial counsel rendered ineffective assistance of counsel to Mr. Jennings by failing to object to the sleeping juror's presence on the jury in violation of his right to counsel and his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

ASSIGNMENT OF ERROR NUMBER THREE: The trial court erred to the prejudice of Mr. Jennings by ordering consecutive sentences and by failing to merge all counts as allied offenses, both in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

ASSIGNMENT OF ERROR NUMBER FOUR: The trial court erred to the prejudice of Mr. Jennings when it ordered him to pay unspecified costs, including court appointed fees, without first determining the ability to pay those costs.

ASSIGNMENT OF ERROR NUMBER FIVE: The trial court erred to the prejudice of Mr. Jennings when it denied a defense motion to have a

complete copy of the prosecutor's file turned over to the court and sealed for appellate review in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

ASSIGNMENT OF ERROR NUMBER SIX: Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

## II. Analysis

### A. Sleeping Juror

{¶ 13} In his first assignment of error, appellant contends that the trial court erred in failing to excuse a sleeping juror. Moreover, in his second assignment of error, appellant alleges that he received ineffective assistance of counsel as a result of defense counsel's failure to seek replacement of the sleeping juror. Because these assignments of error are related, and because they are argued together in appellant's brief, we will address them simultaneously.

{¶ 14} During the trial, the court became aware that juror number 5 was having a hard time staying awake. At one point, defense counsel asked for a sidebar conference and informed the trial judge of the situation. The court decided to monitor the juror, and the trial continued. Additionally, the state alerted the court that it was concerned that an

7.

alternate juror had fallen asleep during its direct examination of Lenhardt.  Once again, the court informed the parties that it would monitor the jury.  The court also indicated that it would provide an instruction if the situation continued.

{¶ 15} On the next day, defense counsel requested another sidebar conference, suspecting juror number 5 of sleeping during the trial.  At the beginning of the conference, the court stated: "I know that you guys think that juror no. 5 is sleeping because his head's down. * * * He's taking notes.  I can see him from up higher.  * * * I've been watching him and he's been – his head is down, his eyes are down, but I can see from the bench here he's writing."

{¶ 16} Finally, on the penultimate day of trial, the court individually voir dired juror number 5.  The court was prompted to voir dire juror number 5 when it became apparent that juror number 5 had fallen asleep during the showing of a lengthy video exhibit.  In questioning juror number 5, the following dialogue took place:

> THE COURT: Just have a seat there, sir.  Okay.  The record should reflect that we're outside the presence of the jury.  We're here with juror No. 5.  You having a little trouble staying awake?
>
> JUROR NO. 5: Not really.
>
> THE COURT: I've been watching and it seems like you were dozing off earlier when the – when the video was being played here.  Is there some – do you feel like – have you caught yourself nodding off here?

8.

JUROR NO. 5: I have done that.

* * *

THE COURT: You can – you want to finish sitting on this trial?

JUROR NO. 5: Oh, yes.

THE COURT: Well, we all want you to [too] but if we notice that you're sleeping, we can't have you continue. Obviously if – it's not fair to the defendants, it's not fair to the State here if you do. So I'm going to caution you that if you continue to have this problem – if there's anything we can do, will you let us know?

JUROR NO. 5: I can do that.

THE COURT: And if you continue to have the problem and you don't let us know, then I may have to remove you and seat one of the alternate jurors.

JUROR NO. 5: Okay.

* * *

THE COURT: We're in recess. Before counsel goes, anybody have any objections to the voir dire of that juror?

[DEFENSE COUNSEL]: On behalf of [appellant], no.

{¶ 17} On appeal, appellant argues that the trial court erred in failing to excuse juror number 5 when it realized that the juror was sleeping during trial. Notably, appellant's counsel did not object to the trial court's instructions to juror number 5, nor

9.

did counsel move for a mistrial. "If a party fails to express dissatisfaction with the trial court's handling of an issue, the issue is waived in the absence of plain error." *State v. Bunce*, 6th Dist. Lucas No. CR200802146, 2010-Ohio-3629, ¶ 32, citing *State v. McKnight*, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046, ¶ 185. Therefore, plain error is the appropriate standard of review.

{¶ 18} In order to establish plain error, appellant must demonstrate "an obvious error that affected substantial rights under exceptional circumstances. Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). An alleged error cannot rise to the level of plain error unless the outcome clearly would have been different if not for the error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996)." *State v. Shaw*, 7th Dist. Mahoning No. 12 MA 95, 2013-Ohio-5292, ¶ 87.

{¶ 19} Here, appellant contends that juror number 5 was observed falling asleep during testimony related to exhibit 37, an aerial photograph of the Moody Manor apartment complex overlaid with a diagram depicting the coverage area of the surveillance system. Appellant asserts that the testimony surrounding exhibit 37 formed "a centerpiece of the State's case in chief."

{¶ 20} Upon review, we find no plain error in this case. Contrary to appellant's assertion, we find that the evidence presented during the period that juror number 5 was allegedly sleeping was not critical to the state's case. Indeed, the trial, which produced almost 1,600 pages of transcript, did not hinge merely on the witnesses' discussion of the surveillance system that was installed at the Moody Manor apartments. Moreover, as

noted by the state in its appellate brief, multiple witnesses testified regarding the surveillance system prior to any contention that juror number 5 was sleeping. Thus, we find that appellant has failed to demonstrate any prejudice in the trial court's failure to replace juror number 5.

{¶ 21} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 22} Notwithstanding our resolution of appellant's first assignment of error, appellant presents the alternative argument that he received ineffective assistance of counsel by virtue of counsel's failure to seek replacement of juror number 5.

{¶ 23} To support a claim for ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

{¶ 24} We have already concluded that appellant failed to demonstrate prejudice by showing that the outcome of his trial would have been different without juror number 5's continued presence on the jury. Consequently, we also find that appellant has failed to meet his burden under the second prong of the *Strickland* test.

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

11.

## B. Consecutive Sentences and Merger

{¶ 26} In his third assignment of error, appellant argues that the court erred at sentencing by imposing consecutive sentences without first making the requisite findings. He also contends that the court erred in failing to merge allied offenses of similar import.

{¶ 27} Concerning the imposition of consecutive sentences, R.C. 2929.14(C) provides, in relevant part:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> * * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 28}** Notably, the trial court "is not required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences provided it is 'clear from the record that the trial court engaged in the appropriate analysis.'" *State v. Wright*, 6th Dist. Lucas Nos. L-13-1056, 1057, 1058, 2013-Ohio-5903, ¶ 33, quoting *State v. Murrin*, 8th Dist. Cuyahoga No. 83714, 2004-Ohio-3962, ¶ 12.

**{¶ 29}** Here, appellant argues that the trial court erred in failing to include "individualized findings to support the trial court's sentencing [appellant] to consecutive sentences." While we have already noted above that the trial court is not required to make such "individualized" findings, we disagree with appellant's contention.

**{¶ 30}** We begin by noting that the trial court stated its findings in support of consecutive sentences at the sentencing hearing. The court also memorialized its findings in its sentencing entry. During the sentencing hearing, the court specifically stated:

> So I find as to each defendant that consecutive sentences are necessary to protect the public from future crime or to * * * punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. I also find that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused

13.

by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as any of the part of the courses of conduct adequately reflect the seriousness of the offender's conduct. I also find the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

{¶ 31} Prior to delivering its sentence, the court examined appellant's criminal history, noting that appellant, a 21-year-old at the time of sentencing, was previously convicted of eight misdemeanors as an adult, as well as five felonies and nine misdemeanors as a juvenile. With regard to the severity of the crimes committed, the court characterized this case as a "tragedy of the highest magnitude," noting that appellant's actions, along with those of his codefendants, resulted in the death of one baby and severe injury to another. The court further noted that appellant maintained his innocence when interviewed by the probation department in preparation for sentencing.

{¶ 32} In light of the foregoing, we conclude that the trial court did not err in imposing consecutive sentences in this case. Indeed, the court was careful to engage in the appropriate analysis, supporting its conclusions by noting, inter alia, appellant's criminal history and the severity of the crimes committed. Thus, we find no merit to appellant's assertion that the trial court did not make the requisite findings under R.C. 2929.14(C)(4).

14.

**{¶ 33}** Next, we turn to appellant's contention that the trial court erred at sentencing by failing to merge all of the offenses as allied offenses of similar import.

**{¶ 34}** As set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the test for whether offenses are allied offenses of similar import under R.C. 2941.25 is two-fold. First, the court must determine "whether it is possible to commit one offense *and* commit the other with the same conduct." (Emphasis sic.) *Id.* at ¶ 48. Second, the court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

**{¶ 35}** At sentencing, the court examined the merger issue and found that merger was appropriate as to the convictions for aggravated murder, murder, and improperly discharging a firearm at or into a habitation. However, the court refused to merge the remaining counts. In his appellate brief, appellant argues that all of the offenses committed in this case were carried out through a single act involving a single animus. As such, appellant argues that the trial court should have merged the offenses at sentencing. For its part, the state acknowledges that the non-merged offenses (felonious assault and attempted murder) are capable of being committed by a single act. Nonetheless, the state urges that the offenses were not committed with a single animus since they involved multiple victims. We agree.

15.

{¶ 36} In *State v. Mitchell*, 6th Dist. Erie No. E-09-064, 2011-Ohio-973, we held that offenses committed against different victims during the same course of conduct are committed with a separate animus for each offense. In that case, Mitchell was found guilty of three counts of complicity to felonious assault, one count of complicity to improperly discharging a firearm at or into a habitation, one count of complicity to improperly handling firearms in a motor vehicle, one count of complicity to having a weapon while under disability, and one count of complicity to carrying a concealed weapon. Mitchell's convictions stemmed from an incident involving his discharge of a firearm into a habitation in which children were sleeping at the time. On appeal, Mitchell argued that the offenses should merge as allied offenses of similar import. In evaluating Mitchell's merger arguments, we began by noting that the offenses placed more than one person at risk of serious harm. *Id.* at ¶ 42. Thus, concerning the convictions for complicity to felonious assault, we stated that "crimes against each victim are of dissimilar import with separate animus." *Id.*; *see also State v. Ruby*, 6th Dist. Sandusky No. S-10-028, 2011-Ohio-4864 (no merger of two counts of attempted murder where the offenses were committed against two victims); *State v. Swiergosz*, 6th Dist. Lucas No. L-12-1293, 2013-Ohio-4625 (refusing to merge multiple kidnapping convictions where each conviction was tied to a different victim); *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 93 (concluding that attempted murder does not merge with murder where the defendant intended to shoot one person but accidentally shot another);

*State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 39 (finding that "separate convictions and sentences are permitted when a defendant's conduct results in multiple victims").

{¶ 37} Similar to the facts in *Mitchell*, the case sub judice involves multiple offenses and multiple victims. In addition to the merged offenses, appellant was found guilty of four counts of felonious assault. The victims of these offenses were named at sentencing as follows: L.H., Nai'Reese Hamilton, Naomi Reed, and Tamatha Pride. Further, appellant was found guilty of attempted murder, relating to the appellant's failed attempt to murder a rival gang member. Because this case involves multiple victims who were placed into harm's way when appellant and his codefendants fired 16 shots into an occupied residence, we find no merit to appellant's contention that the offenses were committed as a single act with a single animus. Thus, we conclude that the trial court did not err in failing to merge the convictions for felonious assault and attempted murder.

{¶ 38} In light of the foregoing, appellant's third assignment of error is not well-taken.

### C. Assessment of Costs

{¶ 39} For his fourth assignment of error, appellant argues that the trial court erred in ordering him to pay "costs of supervision, confinement, assigned counsel, and prosecution" without first ascertaining his ability to pay such costs. Appellant contends that the record contains no evidence to support a finding that he is able to pay the costs.

17.

{¶ 40} Regarding costs of prosecution, R.C. 2947.23(A)(1)(a) provides: "In all criminal cases, including violations of ordinances, the judge or magistrate *shall* include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs." (Emphasis added.) This section "requires a sentencing court to impose the costs of prosecution against all convicted defendants." *State v. Wright*, 6th Dist. Wood No. WD-11-079, 2013-Ohio-1273, ¶ 5, citing *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 917 N .E.2d 393, ¶ 8; *see also State v. Dupuis*, 6th Dist. Lucas No. L-12-1035, 2013-Ohio-2128, ¶ 13 ("Pursuant to R.C. 2947.23, the trial court is required to impose 'the costs of prosecution' on all convicted defendants, including those who are determined to be indigent for purposes of obtaining appointed defense counsel at trial."). Given the trial court's *obligation* to impose costs of prosecution under R.C. 2947.23, this court has held that "[t]he trial court is not required to hold a hearing or otherwise determine an offender's ability to pay before ordering him to pay costs." *State v. Reigsecker*, 6th Dist. Fulton No. F-03-022, 2004-Ohio-3808, ¶ 10, citing *State v. Fisher*, 12th Dist. Butler No. CA98-09-190, 2002-Ohio-2069.

{¶ 41} Regarding costs of supervision, R.C. 2951.021 permits a sentencing court that places a felony offender under a community control sanction to require the offender to pay a maximum of $50 monthly supervision fee as a condition of parole. "No means test is stated. Imposition is in the discretion of the court." *State v. Jobe*, 6th Dist. Lucas

No. L-07-1413, 2009-Ohio-4066, ¶ 78. Appellant advances no argument to explain how the trial court abused its discretion when it imposed costs of supervision in this case.

{¶ 42} In light of the foregoing, we find that the trial court did not err by ordering appellant to pay the costs of prosecution and supervision.

{¶ 43} In addition to his arguments concerning costs of prosecution and supervision, appellant also contends that the trial court erred when it ordered him to pay the costs of confinement and court-appointed counsel. R.C. 2929.28 governs the imposition of costs of confinement. Pursuant to R.C. 2929.28(B), the trial court "may hold a hearing to determine whether the offender is able to pay the financial sanction imposed pursuant to this section or court costs or is likely in the future to be able to pay the sanction or costs." Ohio courts have interpreted R.C. 2929.28(B) to mean that a hearing to determine ability to pay is not required; however, there must, at minimum, "be some evidence in the record that the court considered the defendant's present and future ability to pay the sanction imposed." *Reigsecker*, 6th Dist. Fulton No. F-03-022, 2004-Ohio-3808, at ¶ 11; *State v. Cole*, 6th Dist. Lucas Nos. L-03-1163, L-03-1162, 2005-Ohio-408, ¶ 26. In addition, the payment of court-appointed counsel fees is governed by R.C. 2941.51(D), which states in relevant part:

> The fees and expenses approved by the court under this section shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the

means to meet some part of the cost of the services rendered to the person, the person shall pay the county in an amount that the person reasonably can be expected to pay.

{¶ 44} Before court-appointed attorney fees are imposed on a defendant pursuant to R.C. 2941.51(D), "there must be a finding on the record that the offender has the ability to pay." *State v. Phillips*, 6th Dist. Fulton No. F-05-032, 2006-Ohio-4135, ¶ 20; *see also State v. Knight*, 6th Dist. Sandusky No. S-05-007, 2006-Ohio-4807.

{¶ 45} Here, the trial court stated, in its sentencing entry, that appellant has, or reasonably may be expected to have, the means to pay all or part of the costs of confinement and appointed counsel. However, appellant argues that the record does not support the trial court's determination of his ability to pay. We agree. Having reviewed the record, we note that appellant did not graduate high school, making it only to his sophomore year. Further, appellant has never been gainfully employed. Moreover, appellant has been ordered to serve a life sentence in prison. At a minimum, appellant will not be eligible for release for 40 years. On these facts, we fail to find any evidence that appellant has the ability to pay the costs of confinement and appointed counsel. *See State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919 (vacating imposition of costs of confinement and appointed counsel where the defendant did not graduate from high school, had no meaningful employment history, and was serving a prison sentence that would not be complete until he reached 94 years of age); *see also Jobe*, 6th Dist.

20.

Lucas No. L-07-1413, 2009-Ohio-4066, at ¶ 82 (appellant unable to pay where he only "completed the eighth grade, did not obtain a GED and has never held a job").

{¶ 46} Accordingly, that portion of appellant's fourth assignment of error pertaining to the imposition of the costs of confinement and appointed counsel is found well-taken.

### D.  Disclosure of Prosecutor's File

{¶ 47} In his fifth assignment of error, appellant argues that the trial court erred in denying his pretrial "motion for an order directing that a complete copy of the prosecutor's file be made and turned over to the court for review and to be sealed for appellate review, if necessary."  In his motion, appellant requested that a complete copy of the state's file be made, reviewed by the trial court prior to trial, and sealed for appellate review if necessary.  The trial court denied this motion, reasoning that Crim.R. 16(B)(5) sufficiently safeguarded against withholding of exculpatory evidence by the state.

{¶ 48} Trial courts are not "required to examine the prosecutor's file to determine the prosecutor's truthfulness or seal the prosecutor's file for purposes of appellate review."  *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 60, citing *State v. Chinn*, 85 Ohio St.3d 548, 569, 709 N.E.2d 1166 (1999); *State v. Williams*, 73 Ohio St.3d 153, 172, 652 N.E.2d 721 (1995).  Thus, we find that the trial court did not err when it denied appellant's "motion for an order directing that a complete copy of the prosecutor's file be made and turned over to the court for review and to be sealed for

21.

appellate review, if necessary." Furthermore, in this case, the state was fully aware of its continuing obligation to divulge exculpatory evidence, as evidenced by its memorandum in opposition to the motion wherein it stated that "counsel for the State is well aware of the legal responsibilities placed upon it by the Ohio Revised Code, the Ohio Rules of Criminal Procedure, and the Constitutions of the State of Ohio and the United States of America." Having fully reviewed the record, we find that the state complied with its disclosure obligations under Crim.R. 16. Moreover, we conclude that appellant's implication that the state may have withheld exculpatory evidence from defense counsel is purely speculative. Indeed, appellant pointed to no such evidence in his memorandum in support of the motion, and cites no such evidence before this court on appeal.

{¶ 49} Accordingly, appellant's fifth assignment of error is not well-taken.

### E. Cumulative Error

{¶ 50} As his sixth and final assignment of error, appellant urges that he was deprived of his constitutional rights as a result of the cumulative effect of errors that occurred at trial. The cumulative error doctrine provides that, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

22.

**{¶ 51}** Here, we have not found multiple instances of error by the trial court. Therefore, the cumulative error doctrine does not apply. *State v. Wright*, 6th Dist. Lucas No. L-12-1327, 2013-Ohio-5910, ¶ 31, citing *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000) ("[I]n order even to consider whether 'cumulative' error is present, we would first have to find that multiple errors were committed in this case.").

**{¶ 52}** Accordingly, appellant's sixth assignment of error is not well-taken.

### III. Conclusion

**{¶ 53}** Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. The portion of the court's sentencing order requiring appellant to pay the costs of his confinement and appointed counsel is vacated. The judgment of conviction is affirmed in all other respects. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed, in part,<br>
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                       _____

Stephen A. Yarbrough, P.J.            JUDGE

James D. Jensen, J.                _____
CONCUR.                                  JUDGE

                                          _____
                                               JUDGE

23.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.